### EASTERN TEXAS ELECTRIC CO. v. HUNSUCKER.   (No. 1332.)

(Court of Civil Appeals of Texas. Beaumont.
Feb. 3, 1926.   Rehearing Denied
Feb. 24, 1926.)

1. **Trial ⬥⟹352(4) — Refusal to submit issue whether collision of fire truck and street car, injuring plaintiff, was pure accident was not error, where there was no evidence to sustain such finding.**

Refusal to submit special issue whether collision of fire truck and defendant's street car, knocking plaintiff's truck against him, whereby he was injured, was result of pure accident, was not error, where the uncontroverted facts show nothing to support such finding.

2. **Trial ⬥⟹350(7).**

Evidence *held* not to require submission of issue whether negligence of plaintiff, injured when defendant's street car and fire truck collided and knocked plaintiff's truck against him, was sole proximate cause of injury.

3. **Automobiles ⬥⟹175(4).**

Driver of fire truck is not required to reduce speed to 6 miles an hour 30 feet from street car track.

4. **Automobiles ⬥⟹175(1).**

Driver of fire truck must use ordinary care.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by C. E. Hunsucker against the Eastern Texas Electric Company. From a judgment for the plaintiff, defendant appeals. Affirmed.

Orgain & Carroll, of Beaumont, for appellant.

C. A. Lord, of Beaumont, for appellee.

HIGHTOWER, C. J.   This was a suit by the appellee, C. E. Hunsucker, against appellant, Eastern Texas Electric Company, to recover damages for personal injuries alleged to have been sustained by appellee as the result of a collision between one of appellant's street cars and a fire truck owned and operated by the city of Beaumont, on November 9, 1922.

The substance of appellee's petition as to the cause of the collision between the fire truck and the street car, which resulted in the injuries to him, was as follows:

That on the morning of November 9, 1922, about 8:15 o'clock, a fire broke out on Wall street, in the city of Beaumont, about two blocks west of the intersection of that street with Park street; that the fire signals used by the city were given, and one of its fire trucks left the Central Fire Station with its whistles and gongs giving notice of its approach down Wall street and west to Park street, where those streets intersect; that such signals could be heard for a long distance;

that it was the duty of the motorman on the street car to hear the fire signals and to observe the approach of the fire truck and to keep a lookout for same and to stop the street car and to allow the fire truck to cross Park street before attempting to drive the street car across Wall street, but that the motorman on the street car wholly failed to stop the car, but, on the contrary drove the same across Wall street in front of the approaching fire truck, and that the fire truck and street car collided with great force and violence; that the fire truck had the right of way under the law and under the ordinances of the city of Beaumont, and that one of the ordinances of the city required the street car to stop, and that the street car motorman knew that the fire truck was approaching the crossing at the intersection of Wall and Park streets, or that by the exercise of ordinary care he could and would have known of the approach of the fire truck, and that the city ordinance required the street car to stop and to remain stopped until the fire truck could pass; that the appellee was a dairyman, delivering milk in the city of Beaumont, and had at the time stopped his Dodge truck, in which he delivered his milk, on Park street on the west side thereof, and about 10 or 15 feet north of the intersection of that street with Wall street, and that at the time of the collision appellee was standing on the sidewalk next to his milk truck, and was in the act of getting into same, but that, after the collision between the street car and the fire truck, one or the other was thrown violently against his milk truck, and it was violently thrown against him, and he was thereby thrown against the side walk, knocked unconscious, and severely injured. Here follows a detailed statement of the injuries sustained by the appellee. He then alleged that his injuries were directly and proximately caused by the negligence of appellant's street car motorman in driving the street car across Wall street, instead of stopping the same and waiting for the fire truck to cross Park street ahead of the street car, and in failing to keep a proper lookout for the approach of the fire truck to the intersection of those streets.

Appellant answered by general demurrer and general denial, and then specially pleaded that the fire truck was driven at the time at an excessive and negligent rate of speed, and was being operated in disregard of human life, and that the appellee observed and saw that the fire truck was being so operated, and that it was approaching the intersection of said streets without giving notice thereof by ringing the bell or blowing the whistle on the truck, and that appellee saw and knew that the street car was making use of the crossing, and that the motorman thereon did not know of the approach of the fire truck, and that, in the exercise of ordinary care, he

could not have known of it, and that appellee knew that the fire truck would probably be turned in his direction, and that he was guilty of negligence in remaining and standing near his milk truck as he was, and in not removing himself therefrom, or that, if he did not know of such conditions, he was guilty of negligence in not knowing thereof; that such negligence on appellee's part was the sole proximate cause of his injuries, or that his negligence proximately contributed to cause his injuries; that appellant's motorman could not reasonably have foreseen that the fire truck would strike and injure the appellee.

Appellant, in the alternative, then allegea that the fire truck was driven at an excessive and dangerous rate of speed, without ringing a bell and without blowing a whistle, or giving any other signals of its approach, and that the driver of the truck negligently failed to slow down to a speed of 6 miles an hour at a distance of 30 feet from the intersection of Park and Wall streets, and negligently failed to operate the truck so as to have it under control while crossing Park street; that the driver of the fire truck failed to keep a proper lookout for the approach of the street car; that, if the driver of the fire truck saw the street car, he negligently failed to turn the truck to the left in the attempt to cross Park street so as to pass around the street car to its rear; that such acts of negligence jointly and severally on the part of the driver of the fire truck were the sole proximate cause of appellee's injuries. Again, in the alternative, appellant alleged that appellee's injuries, if any, were the result of a mere accident, which could not have been foreseen or anticipated by the use of ordinary care on its part.

The case was tried with a jury, and was submitted upon special issues, all of which were answered in appellee's favor, and upon the verdict as a whole judgment was rendered in favor of appellee for $4,000, from which this appeal is prosecuted.

The court's main submission contained the following special issues:

"Special issue No. 1. Do you find from the evidence that the motorman on the street car in question knew, or by the exercise of ordinary care could have known, of the approach of the fire truck in question before proceeding across Wall street? Answer 'Yes' or 'No' as you may find the facts to be."

The jury answered this issue in the affirmative.

"Special issue No. 2. Do you find from the evidence that the motorman on the street car was guilty of negligence in proceeding as he did, in front of the approaching fire truck, under all the facts and circumstances? Answer 'Yes' or 'No' as you may find the facts to be."

To this issue the jury answered, "Yes."

"Special issue No. 3. Was the negligence of the motorman on the street car, in proceeding in front of the approaching fire truck (if you have found that such was negligence), the direct and proximate cause of the collision and injuries, if any, in question in this case? Answer 'Yes' or 'No' as you may find the facts to be."

To this issue the jury answered, "Yes."

"Special issue No. 4. What amount of money, if paid now in a lump sum, will fairly and reasonably compensate the plaintiff for the injuries, if any, and damages, if any, sustained by him?"

To this the jury answered, "$4,000."

At appellant's request, the trial court submitted to the jury the following special issues:

"Was the fire truck, as it approached the crossing in question, under all the circumstances, being operated at a reckless rate of speed?"

To this question the jury answered, "No."

"Was the rate of speed at which the fire truck was being operated toward the crossing in question, under all the circumstances, a negligent rate of speed?"

To this question the jury answered, "No."

"Was the gong upon the fire truck sounded as said fire truck approached said crossing?"

To this question the jury answered, "Yes."

"Did the driver of the fire truck look for the approach of a street car as he approached said street car track crossing?"

To this question the jury answered, "No."

"Was such failure to look on the part of the operator of the fire truck, as the street car track was approached, negligence under all the circumstances, as that term has hereinbefore been defined?"

To this question the jury answered, "No."

Special issue No. 41, requested by appellant and submitted by the court, was as follows:

"Did the operator on the street car, as he came to the intersection of Wall and Park streets, look out to ascertain if he could safely make use of said crossing?"

To this question the jury answered, "No." Then immediately followed this further question:

"Special issue No. 42. If you have answered defendant's special requested issue No. 41 'No,' and only in that event, then answer this issue, Was such failure, if any, negligence?"

To this question the jury answered, "Yes." Special issue No. 43, given at appellant's request, was as follows:

"If you have answered defendant's special requested issue No. 42 'Yes,' and only in that event, then answer this issue, Was such negligence, if any, the proximate cause of plaintiff's injuries, if any?"

To this question the jury answered, "Yes." Special issues Nos. 8 and 9, requested by appellant and submitted by the court, were as follows:

"No. 8. Under all the circumstances in evidence before you, was the plaintiff guilty of contributory negligence, as that term has hereinbefore been defined, in taking a position near said milk wagon?"

To this question the jury answered, "No."

"No. 9. Under all the circumstances before you in evidence, was the plaintiff guilty of negligence, as that term has hereinbefore been defined, in taking a position near said milk wagon?"

To this question the jury answered, "No."

Thus it will be seen from the statement of the pleadings of the appellee, as outlined above, and the court's submission of the special issues in line with his pleadings, that it was appellee's contention that the motorman on the street car heard, or ought to have heard, by the use of proper care, the approach of the fire truck to the intersection of Park and Wall streets; that the motorman saw, or ought to have seen, the approach of the fire truck and that it was his duty to stop the street car before passing over Wall street, so as to permit the fire truck to cross Park street in advance of the street car, and that the motorman was guilty of negligence in proceeding across Wall street as he did in front of the fire truck. These contentions, as we have shown, were submitted for the jury's consideration, and all of them were sustained by the jury's findings, and the evidence in the record is clearly sufficient to sustain these findings, and indeed they are not attacked by appellant.

It was appellant's contention that the gongs and other signals on the fire truck were not sounded as it approached the intersection of Wall and Park streets, and appellant had the trial court submit, for the jury's finding, this contention, and the jury found that the signals were given by the fire truck, and that there was no negligence, therefore, on the part of the operatives on the fire truck in failing to give proper signals of its approach to the street crossing. Appellant further contended that its motorman did, in fact, keep a proper lookout to ascertain if the street car could safely go over the crossing of Park and Wall streets at the time it attempted to do so, and had the court submit this contention for the jury's finding, which was adverse to appellant, and in the same connection the jury also found, as we have shown, that this negligence on the part of appellant's motorman to keep a proper lookout was the proximate cause of the collision and plaintiff's injuries. Again, as we have shown, it was appellant's contention that plaintiff himself was guilty of negligence, which was the sole cause of his injuries, or which contributed thereto, by his standing on the sidewalk near his milk truck, under all the facts and circumstances at the time, and this contention was submitted, at appellant's request, and was found against it; in other words, the jury found that appellant's motorman was guilty of negligence in all respects as alleged by appellee, and that such negligence was the proximate cause of appellee's injuries, and the jury further found that those in charge of the fire truck were not guilty of any negligence in what they did or failed to do, and further found that appellee himself was not guilty of any negligence as pleaded by appellant.

The jury's verdict, as returned, is not attacked for lack of sufficient evidence to support it in any particular, nor upon any other ground, and the only matters assigned by appellant for reversal of the judgment related to the refusal of the trial court to submit for the jury's consideration certain special issues in addition to those which the court did submit.

[1] Appellant's first contention for reversal, as made by its first and second propositions, is that the evidence as a whole was such as to require the court to submit for the jury's determination whether appellee's injuries resulted from a mere accident, which it could not have reasonably foreseen or anticipated by the use of ordinary care, and it requested the trial court to submit that special issue, and the court declined to do so.

It is not necessary, in disposing of appellant's contention that the trial court was in error in refusing to submit its requested issue of mere accident, to mention in detail the evidence adduced upon the trial. It would serve no useful purpose whatever to detail it, and, since to do so would carry this opinion to an unreasonable length, we shall decline to state the evidence in detail, but will state, generally, our conclusions therefrom.

The evidence shows that about 8:15 on the morning of November 9, 1922, a fire broke out in the city of Beaumont on Wall street, about two blocks west of where that street is crossed by Park street. Wall street runs east and west through the city, and Park street runs north and south through the city. Appellant's street car track is laid in the center of Park street. At the point where Wall and Park streets intersect, and where the occurrence in question took place, there was much traffic by people in general and vehicles of all kinds and character using both of these streets where they intersect and cross.

The evidence was sufficient to show that, when the fire department of the city was notified of the fire on Wall street, the fire whistle of the city, used for the purpose of notifying and alarming the public using the streets, was sounded in the usual and customary way, and that one of the city's fire trucks, propelled by motor power, left the fire station for the purpose of going to the fire on Wall street to put it out, and when the fire truck reached Wall street, after leaving the station, it proceeded west on that street at a rapid rate of speed; some of the witnesses testifying that the speed of the truck was from 30 to 40 miles an hour, while others testified that

its speed was between 15 and 20 miles an hour. When the fire truck reached Park street, where it crosses Wall street, it came in collision with one of appellant's street cars, and in consequence of the collision the fire truck was thrown against a Dodge automobile truck that was used by appellee as a dairyman in delivering milk to the public in the city of Beaumont. At the time this occurred, appellee's milk truck was standing on the west side of Park street and right near the curb on the street, and in close proximity to the sidewalk, and appellee himself was standing by his milk truck, and was in the act of getting into it, but, when his milk truck was struck by the fire truck, it knocked the milk truck against appellee and knocked him down on the side walk, and he was injured. There is no necessity for stating the extent of his injuries, because that is not involved in this appeal. At the time the fire truck was thrown against the milk truck, it was between 15 and 25 feet north of the intersection of Park and Wall streets.

The street car that collided with the fire truck was traveling north on Park street, and the evidence was sufficient to show that the motorman on the street car had reduced its speed to about 5 miles an hour just before reaching Wall street, and that the speed of the street car had not attained a greater rate than 6 miles per hour at any time while crossing Wall street at the time of the collision. The evidence was sufficient to show that the motorman on the street car did not in fact, discover the approach of the fire truck until it was within 25 or 30 feet of the intersection of Park and Wall streets. The motorman testified that he had not heard any signal given by the fire truck of its approach until it was actually within 25 or 30 feet of the street car, and then he heard a clap or two of the bell on the fire truck. The motorman further testified that he, immediately on discovering the approach of the fire truck, put on his emergency brakes, but that he was unable to then prevent the collision. He testified that the fire truck was going at a very rapid rate of speed, maybe as high as 30 or 40 miles an hour at the time of the collision. The motorman on the street car further testified that he did not know of the presence of appellee at the place where he was at the time of the collision. He further testified that when the street car was within about 10 feet of the intersection of Wall and Park streets he looked for a distance of as much as half a block in both directions—that is, up and down Wall street—to see if any vehicles or other traffic were approaching the crossing, and that he saw none, and then gave more power to the street car and proceeded on across Wall street, and that he had gone 40 per cent. of the distance across Wall street when he discovered the approach of the fire truck to the crossing. He further testified that he thought the width of Wall street was about 60 feet, and that at the time of the collision, and after he saw the approach of the fire truck, he thought that the driver of the fire truck would turn it to the left as he proceeded west on Wall street, and that he would thereby miss striking the street car, but that instead, the driver of the fire truck turned it to the right and crossed, or attempted to cross, Park street just in front of the approaching street car. The evidence was sufficient to show that those in charge of the fire truck, at the time, discovered the approach of the street car to the crossing when the truck was between 50 and 75 yards of the crossing, and the driver of the truck testified that the street car, at the time it was discovered, was going very slow, and that he thought that it would stop before attempting to make the crossing of Wall street, but that it did not do so, but, on the contrary, the motorman on the street car suddenly speeded it up, after getting into Wall street, and ran into the fire truck, knocking it against appellee's milk truck, and thereby causing his injuries. The evidence of all the operatives of the fire truck was sufficient to show that the signal gongs and bells on that truck were given in the usual and proper way while it proceeded down Wall street in the direction of Park, where the collision occurred, and that the giving of these signals continued right up to the time of the collision.

It was shown by the evidence of the motorman on the street car that he knew that the fire truck had the right of way over the crossing; that is, he knew that the fire trucks in the city of Beaumont, according to the practice between the fire trucks and the street cars, had and exercised the right of way over crossings, and that the rules of appellant company required the motorman on its street cars to give the fire trucks such right of way at street crossings.

The evidence further showed that one of the city ordinances in effect at the time of the collision gave the right of way over the crossings to the fire trucks and another one of the city ordinances provided that it should be the duty of the motorman on the street cars to stop them in the middle of the block between street crossings when the fire alarm of the city was sounded.

The evidence was amply sufficient to warrant the finding of the jury that appellant's motorman on the street car was guilty of negligence in proceeding across Wall street ahead of the approaching fire truck, and also to warrant the jury's finding that appellant's motorman was guilty of negligence in not keeping a proper lookout for the approach of the fire truck to the crossing, and to warrant the finding of the jury that the motorman's negligence in both respects was the direct and proximate cause of the collision and injuries that resulted to the plaintiff, and also it was amply sufficient to warrant

the finding of the jury that the appellee was not guilty of any negligence as pleaded by appellant.

There was nothing in the evidence to indicate any cause of the collision in question between the fire truck and the street car, unless it was caused by the negligence of appellant's motorman, as pleaded by appellee and established by the jury, or unless it was caused by some negligent act or omission on the part of those in charge of the fire truck, as pleaded by appellant, and which was denied by the jury. In other words, the evidence was sufficient, as we have already stated, to trace the cause of the collision and the resulting injuries of appellee to the negligence of appellant's motorman in both respects as alleged by appellee, and was also sufficient to warrant the finding of the jury that the collision and resulting injuries to appellee were not caused by any negligence on the part of those in charge of the fire truck, and were not caused by any negligence on the part of the appellee himself, and the state of the evidence was such as to negative any contention that appellee's injuries resulted from any unknown act or omission on the part of any one, negligent or otherwise, than as stated. Such being the state of the evidence, notwithstanding appellant's plea of mere accident, there was no necessity or reason for a submission of appellant's requested issue of mere accident, and the court therefore was not in error in refusing to submit that issue.

Here the cause of the collision which resulted in appellee's injuries was clearly traced by the evidence to the negligent act and omission of appellant's motorman in failing to keep a proper lookout for the approach of the fire truck to the street crossing, and to his negligent act in driving the street car over the crossing in advance of the approaching fire truck, and appellant does not contend otherwise. Appellant did contend upon the trial that the collision and resulting injuries to appellee were brought about by certain negligent acts and omissions on the part of those in charge of the fire truck, and also contended that appellee himself was guilty of negligence which was the sole cause of his injuries, or at least that his negligence proximately contributed to his injuries. Now the jury's verdict established the fact, not contended otherwise by appellant here, that none of these acts of alleged negligence on the part of those in charge of the fire truck, or on the part of the appellee, caused the collision and resulting injuries, nor is it suggested by appellant that the collision and resulting injuries were caused in any unknown manner, nor is it suggested by appellant that the collision and resulting injuries were caused in any manner not alleged by plaintiff and for which appellant would not be liable. Wherefore, as we construe the authorities, there was nothing in the evidence in this case upon which to base a charge of mere accident, as requested by appellant. Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080; Wichita Falls Traction Co. v. Craig (Tex. Civ. App.) 250 S. W. 733; 20 R. C. L. 19.

The able counsel for appellant in this case contend that, according to the holding of our Supreme Court in the case of G., H. & S. A. Ry. Co. v. Washington, 63 S. W. 534, 94 Tex. 510, and the holding of our Commission of Appeals, Section B, in Railway Co. v. Rowe, 238 S. W. 909, and the decision by this court in West Lumber Co. v. Landers, 258 S. W. 227, the trial court was required to submit at its request the issue of mere accident. No useful purpose would be served by this court's discussing the facts in the Washington Case and the reasons for the conclusions there reached by the court, nor in discussing the facts in the Rowe Case, or the conclusion there reached by the court, because those two cases were very fully discussed by the Commissions of Appeals of this state, Section A, in Boyles v. McClure, 243 S. W. 1080, and again those two cases were thoroughly discussed by the Fort Worth Court of Civil Appeals in Wichita Falls Traction Co. v. Craig, 250 S. W. 733. Upon examination of those cases, it will be seen readily, we think, that the very reasons given by both courts in the Washington Case and the Rowe Case as to why the defense of accident should have been submitted, when applied to the facts of this record, negative any necessity or propriety for the submission of that issue in this case. As to the case of West Lumber Co. v. Landers, supra, it will be seen at a glance that this court based its holding that the issue of accident there requested should have been submitted upon the positive statement of the plaintiff himself that the injury of which he complained was a mere accident and not attributable at all to the alleged act of negligence in that case. In other words, we might here adopt as our conclusion on this point the counterproposition of counsel for appellee, which is:

"When an event takes place, the real cause of which cannot be traced, or is, at least, not apparent, it ordinarily belongs to that class of occurrences which are designated as purely accidental, but in this case there is no controversy with reference to the facts, and there is nothing in any of the facts leaving any possible grounds for any element of accident and there are no facts whatever that would support any finding of accident if such an issue had been submitted to the jury."

It follows from these views that this court is of the opinion that there was no error on the part of the trial court in refusing to submit the issue of accident, as requested by appellant.

[2] The other assignments and propositions relate to the refusal by the court to submit a number of special issues requested by ap-

pellant, with a view to having the jury determine whether appellee's injuries were caused solely by his own negligence or whether his injuries were caused solely by the negligence of the driver of the fire truck in failing to reduce the speed of the truck to at least 6 miles an hour when the truck approached within 30 feet of appellant's track at the intersection of the street crossing.

As to the contention of counsel for appellant that the court should have submitted to the jury an issue, at its request, as to whether appellee's own negligence was the sole proximate cause of his injuries, we have only to say that there was no evidence whatever that in our opinion required the submission of any issue of negligence on the part of appellee, either as to whether the same was the sole cause of his injuries or only proximately contributed thereto. We think there was not a particle of evidence in this record that justified the trial court in submitting the issue of negligence on the part of the appellee, as he did. The evidence shows without controversy that the appellee was standing on the sidewalk on Park street in close proximity to his milk truck that was rightfully on the street and in a proper place for it to be, and was some distance above the intersection of Wall and Park streets, and there is not a thing in this record which in our opinion suggested any lack of care on the part of the appellee in remaining where he did, by his car, under the circumstances, as the truck and street car approached the crossing. We think that appellant has no just cause of complaint on the part of the action of the trial court in refusing to submit to the jury the issue as to whether appellee was guilty of negligence which was the sole proximate cause of his injuries, as complained of in these assignments and propositions.

[3, 4] Nor do we think that there was any error on the part of the trial court in declining to submit for the consideration of the jury whether the driver of the fire truck was guilty of negligence which became the sole proximate cause of the plaintiff's injuries in failing to reduce the speed of the fire truck, as it approached the street car track, to 6 miles an hour at a distance of not less than 30 feet from the track. We know of no law, statutory or otherwise, that required the driver of the fire truck to so reduce the speed of the fire truck at such distance from the street car track. He was required to use ordinary care, and the jury found that he did so, and this finding is not complained of. The jury expressly found that the rate of speed at which the truck was being driven at the very time of the collision was not reckless, and did not amount to negligence on the part of the driver of the truck. That was the only ground of negligence that appellant was entitled to have submitted for a specific answer by the jury, and it was determined

against appellant, and, as we have stated, it has not complained. It cannot, we think, be contended with reason that, even if the court had submitted as a special issue whether the failure of the driver of the fire truck to reduce its speed to 6 miles an hour, as requested by appellant, had been given to the jury, that the jury would have answered such an issue in appellant's favor. But whether we are correct in this or not, the appellant was not, under the law, entitled to have such special issue submitted.

What we have said, in effect, disposes of all appellant's contentions, and, believing that none of them point out reversible error, the judgment has been ordered affirmed.