**BURGE v. BATSON.** (No. 1765.)

Court of Civil Appeals of Texas. Beaumont.
Dec. 7, 1928.

Rehearing Denied Jan. 15, 1929.

J. L. C. McFaddin, of Beaumont, for appellant.

John T. Kitching, of Beaumont, for appellee.

WALKER, J. Appellee instituted this suit against Ben De Spain and appellant, M. Burge, to recover damages to her Buick car. She alleged that the defendants were partners operating a garage in Beaumont, Tex.; that she delivered her car to them to have the brakes repaired; that they instructed one of their servants to drive the car up an inclined plane leading from the first floor to the second floor of the garage; that the servant in driving the car up the plane negligently lost control of it, causing it to roll down the plane and strike a brick wall at the foot of the plane, damaging the car $400. In the alternative she alleged that if, in fact, M. Burge was not connected with the repair department of the garage, he caused her to believe it was his and received her car for repairs, thereby making himself an ostensible principal. The general denial of defendants presented all defensive issues urged.

In answer to special issues, the jury found: (a) That appellee believed at the time she delivered her car at appellant's garage for repairs that it was to be repaired by his employés; (b) that appellee was led to so believe by the acts of appellant at the time she delivered her car to him for repairs; (c) that the servant was guilty of negligence in attempting to drive the car up the inclined plane; (d) that the car was in a damaged condition at the time it was returned to appellee; (e) that the negligence of the servant was the direct and proximate cause of the damage done to the car; (f) that the damages amounted to $250.

On the verdict judgment was entered against De Spain and M. Burge, and Burge alone has prosecuted an appeal from the judgment.

The assignments attacking the verdict as being without support are all overruled. Appellee testified that she carried her car to appellant's garage on the advice of the Buick agency, believing that he owned and operated the repair department, and thought she was delivering her car to him to be repaired by his servants. Appellant received her at the entrance of his garage and inquired what she wanted. As to what occurred between them, appellee testified: "I bought the car from Smith-May in Port Arthur. They were dealers in Buick cars. I went to the Buick people here (Beaumont) to get my brake adjusted, because they were Buick dealers, and they told me to go to Burge's Garage on Fannin Street (in Beaumont). I went there. I drove in the entrance. Mr. Burge came to the car and asked me what I wanted. I told him I wanted the brakes adjusted. He said he would fix me up. He says, 'I will fix you up, but you will have to drive in the back of the building and go upstairs, for the mechanic's department is upstairs.' I told him I was afraid to make the attempt to drive and at that time he called one of the mechanics and had him drive the car. When the mechanic came to the car I told him what I wanted. Mr. Burge called the mechanic, that is Mr. Burge, the defendant. I guess about one or two minutes after he called the mechanic came—just a short time. After the mechanic came I told the mechanic what was the trouble with the car, told him the brake was bad. He jumped in and tried to make an attempt to drive up and lost control of it and backed in the back of the brick building." This testimony raised the issue that the conduct of appellant caused appellee to believe that his employés would repair her car. Without quoting the evidence further, it was sufficient to raise the issue that the mechanic was negligent in driving the car, and that such negligence was the proximate cause of the accident, and that appellee suffered damages thereby in the sum found by the jury.

But on the record as a whole appellant insists he was not liable for appellee's damages. This proposition is based on the following facts: Appellant was operating a two-story garage. The first floor was connected with the second floor by an inclined plane starting on the first floor about 30 feet from the back wall of the garage. This plane was about 30 feet long, landing on the second floor. Appellant had, prior to the accident, leased a part of the second floor to defendant De Spain for the purpose of operating a repair department, which De Spain was operating at the time of the accident. Ap-

pellant himself used a part of the second floor, and both he and De Spain used the inclined plane to carry cars from the first to the second floor. Appellant was not a partner with De Spain, had no interest in his business, and no authority to make contracts for him. De Spain had no servant on the first floor to receive his trade and direct them to his repair department. That was done for him by appellant Burge, or one of appellant's servants. Appellant met all customers of the garage at the entrance. If he could serve them, he did so. If they wanted repair work, he called De Spain by ringing an electric bell in his office, when De Spain would send down one of his servants to receive the customers. Appellant had never told any one wanting repair work that the repair department was not his. At the entrance of the garage was a large electrical sign reading, "Burge's Garage." At the back of the garage near the foot of the inclined plane was another sign reading, in substance, "Repair Department." There was nothing to give notice to a stranger that the repair department did not belong to appellant. He received all customers wanting repair work as he received appellee. In this instance, as in all others where the customer's car was to be repaired, the car was delivered to a servant of De Spain, but the customer was not notified of that fact. While appellant was not interested in De Spain's business, the facts show that he was an agent of De Spain to receive customers and direct them to his repair department. As we understand the record, the facts as stated appear without controversy; but, if not correct in that, the evidence was sufficient to raise the issue as one for the jury.

On these facts appellant was the ostensible principal, and as such liable on the jury's verdict for appellee's damages. The rule was thus stated in Book v. Jones (Tex. Civ. App.) 98 S. W. 891: "It is an elementary principle of law that, where an agent conceals the fact of his agency and enters into a contract in his own name as the ostensible principal, he may be treated as the principal by the party with whom he deals, and may be held liable on a contract to the same extent as if he were the principal in interest." See, also, Hauser v. Layne & Bowler (Tex. Civ. App.) 131 S. W. 1156.

The trial court gave the following definition of "proximate cause": "By direct and proximate cause is meant a cause which, operating in natural and ordinary sequence, unbroken by any new cause, produces the event and without which such event would not have happened." This charge was excepted to on the ground that it failed to submit the issue of foreseeableness or anticipation of the injury complained of as a result of the negligence charged. On authority of Enterprise Co. v. Alexander (Tex. Civ. App.) 6 S.W.(2d) 423, and authorities therein cited, the charge was erroneous and constitutes reversible error. As the issue of proximate cause was in the case, appellant was entitled to a correct definition. Rosenthal v. Hillebrandt (Tex. Com. App.) 7 S.W. (2d) 521. While conceding that the charge was defective, appellee insists, on the peculiar facts of this case, it was not reversible error. It was her contention that as a matter of law appellant was required to foresee the consequences of the negligence of his driving. The servant knew of the defect in the brakes. Appellee testified that the servant negligently lost control of the car and that the accident was then the result of the brake trouble. The issue was raised that the driver was reasonably skillful and that the accident was the result of a defect in the engine, of which he knew nothing at the time. This defect killed the engine, and because of the defect the mechanic was not able to start the engine again, thereby losing control of the car. Clearly, on these facts, it was for the jury to say whether the negligence of the servant was the proximate cause of the accident.

The issue of "unavoidable accident" was also raised by the evidence, and appellant duly excepted to the failure of the court to submit that issue to the jury. Under the testimony of the driver, he was not negligent and the accident was caused by the defect in the engine, of which he knew nothing until he discovered it while repairing the car. Appellee knew nothing of the defect and gave no notice, of course, to appellant of any trouble with her engine. On authority of Rosenthal v. Hillebrandt, supra, this evidence raised the issue of unavoidable accident.

For the reasons given, the judgment of the trial court is reversed and the cause remanded for a new trial.

HIGHTOWER, C. J. I agree with the conclusion reached by Judge WALKER that the judgment in this case must be reversed and the cause remanded, because of the trial court's erroneous definition of the term "proximate cause." But I have not examined the record fully enough at this time to determine whether or not the trial court was in error in refusing to submit to the jury the issue of unavoidable accident. My views on that question are fully expressed in the case of Eastern Texas Electric Co. v. Hunsucker, 280 S. W. 887.