RED THOMPSON v. THE STATE.

No. 2718.   Decided February 4, 1914.

Rehearing denied March 4, 1914.

**1.—Murder—Requested Charge—Circumstantial Evidence.**

Where, upon trial of murder, the testimony showed that the defendant admitted to many witnesses that he struck the blows that killed deceased, there was no error in refusing a special charge on circumstantial evidence.

**2.—Same—Sufficiency of the Evidence.**

Where, upon a conviction of murder assessing the death penalty, the record on appeal showed that the evidence sustained the conviction, there was no error on that ground.

**3.—Same—Insulting Conduct to Female Relative—Charge of Court.**

Where, upon trial of murder, the defense introduced in evidence insulting words and conduct of deceased towards defendant's sister, and the court instructed the jury in the language of the statute that this was adequate cause, etc., there was no error on that ground.

**4.—Same—Manslaughter—Charge of Court—Insulting Conduct to Female Relative.**

Where the court's charge on manslaughter was in strict accordance with articles 1132 and 1133, Penal Code, there was no error on that ground.

**5.—Same—Reasonable Doubt—Charge of Court.**

Where the court's charge on reasonable doubt was in accord with the statutory provision in that respect, there was no reversible error.

**6.—Same—Jury and Jury Law—Challenge for Cause.**

Where, upon appeal from a conviction of murder, the record showed that the jurors objected to were qualified, and it was not shown that they served

on the jury in the trial of the defendant, or that defendant was forced to accept any objectionable juror, there was no error.

### 7.—Same—Evidence—Tracks.

Where, upon trial of murder, it was shown by the evidence, that defendant was at a certain place on the night of the homicide and admitted that he had had a fight with the deceased, etc., there was no error in admitting testimony of tracks found leading from the place where deceased was found to the place or in the direction of the place where defendant made these declarations.

### 8.—Same—Evidence.

Where the admission of the testimony of a certain witness was correct there was no error on this ground.

### 9.—Same—Evidence—Contradicting Witness.

Where a certain witness testifying to material facts for the State claimed that she was forced and coerced into making certain statements to the county attorney, there was no error in permitting him to testify that said witness was not in any manner coerced in making such statements.

### 10.—Same—Argument of Counsel.

Where the argument of State's counsel criticising a certain witness could not have injuriously affected defendant's case and no special instruction was requested, and the court orally instructed the jury not to consider same, there was no reversible error.

### 11.—Same—Evidence—Bills of Exception.

In the absence of bills of exception to the admission of testimony, complaints in the motion for new trial on this ground can not be considered on appeal.

Appeal from the District Court of Wood. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*W. W. Campbell,* for appellant.—On question of contradicting State's witness: Barnard v. State, 73 S. W. Rep., 957; Baum v. State, 60 Texas Crim. Rep., 638, 133 S. W. Rep., 271.

On question of argument of counsel: Chancey v. State, 50 Texas Crim. Rep., 85, 96 S. W. Rep., 12; Brock v. State, 71 S. W. Rep., 20; Davis v. State, 77 S. W. Rep., 451.

On question of allowing county attorney to impeach his witness: Skeen v. State, 61 Texas Crim. Rep., 39, 100 S. W. Rep., 770; Ozark v. State, 51 Texas Crim. Rep., 106, 100 S. W. Rep., 927; Goss v. State, 124 S. W. Rep., 107, and cases supra.

On question of insufficiency of the evidence: Cheatham v. State, 57 Texas Crim. Rep., 442, 125 S. W. Rep., 565.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was found guilty of murder, and his punishment assessed at death.

Appellant was charged with the murder of Norman Reeves. Reeves

was at the home of appellant on Saturday afternoon, appellant, his father, sister and some others being present. The testimony would indicate that Reeves was drinking, and it is claimed he sought to have intercourse with appellant's sister, to which she objected, and left home to go and get an officer. The testimony would further show that appellant was present in the home at the time, and heard and saw all that took place; however, his sister says that while appellant was in the adjoining room playing dominoes, she does not know whether he heard her holler, or heard deceased talk or saw his actions or not. But when she places her brother, herself and deceased in the position she does, it seems incredible to anyone that appellant could not and did not know what was taking place, while the State's witnesses would have him not only hearing and seeing all that was said and done, but making remarks about the matter, yet he permits deceased to quietly leave the house, he following after him shortly. Then just before dark he is seen talking to deceased; while some time that night deceased is murdered. They trace tracks from the body of deceased, found in a dugout or ditch, in the direction of Lucy Thomas' house, and appellant is shown to have appeared at her house between eight and nine o'clock at night, and she testifies that appellant told her that he and Commie Lloyd had a fight with deceased, and had robbed him of his ring, purse, money and a handkerchief. When appellant was arrested a purse was found on his person that Charlie Reeves and Mrs. Reeves (father and mother of deceased) positively identify as the purse of the murdered man, Mrs. Reeves telling of circumstances of it getting real wet and drying it, whereby she could identify it. It is true that the mother and sister of appellant say the pocket-book found on appellant is their mother's, yet the justice of the peace says that at the time of the examining trial he showed this pocket-book to appellant's mother, and while she at first claimed it as hers, yet when questioned she admitted that her pocket-book was not sewed like this one, and was not torn as this one was, and that it was not her pocket-book. It was further shown by the State that appellant in the afternoon played pool in a hall in Mineola, and when he got through did not have enough money to pay the fees he was owing, but came back in that night and took a five dollar bill out of a purse and paid his bill, and took the change, placing it back in his purse, and said, "he had as much money as a Jew." Deceased is shown, when he left home, to have had between $40 and $50, yet when found he had no money and his large pocket-book was missing. Two other witnesses testify that appellant admitted to them, or in their presence, that he killed deceased. So the contention of the State was that appellant killed deceased to rob him, while the defendant's theory is, if appellant killed him, it was on account of the insults to his sister hereinbefore recited.

One of the complaints is that the court erred in not giving appellant's special charge requested on circumstantial evidence. Inasmuch as Lucy Thomas, Mamie Thompson and Alice Briscoe all testified that appellant

admitted to them he struck the blow that killed deceased, there was no error in refusing the special charge. Branch's Crim. Law., sec. 203.

The first four grounds in the motion for a new trial complain that the evidence, and all the evidence, would not justify a finding nor support a verdict of murder in the first degree. Of course, if we should take appellant's theory, that he killed deceased because of insults to his sister, this perhaps would be true, yet if appellant heard the insulting remarks and witnessed the conduct of deceased, and made no effort to restrain him or kill deceased at that time; let him leave, and then follow along behind him, and after dark take an iron rod or bolt and strike him in the back of the head, and then rob him of his money, this state of facts, instead of presenting manslaughter, would be most cogent circumstances to show a premeditated killing for the purpose of robbery. However, the State was not bound to accept the theory of appellant, and it offered strong and cogent proof that the killing was not on account of any insult to his sister, but for the purpose of robbery, and at the time this case was tried if the killing took place under circumstances showing that it was done in perpetrating robbery, it, in law, would be murder of the first degree. (Article 1141, Penal Code.) The evidence for the State further shows that deceased that day had between $40 and $50 on his person and in his pocket-book; this pocket-book was found in possession of appellant after the murder; he was shown to have no money in the afternoon, while later in the night of that day he is shown to have a five dollar bill, and when he got it changed in Monroe Ellis' pool hall said: "I have got money in my hip pocket like a Jew." Lucy Thomas testified that appellant admitted to her that he and Commie Lloyd had had a fight with deceased, struck him with a piece of iron, and had taken off of him his money and ring, handkerchief, etc. All these things were missing from deceased when found, and he had been murdered by blows from some kind of instrument, one in the back of the head and one on the side of his head, the skull being crushed from both blows. This evidence if believed by the jury certainly supports the verdict in this case.

The next ground in the motion is that the court "erred in not affirmatively charging the jury that the insulting words and conduct of deceased towards appellant's sister was an adequate cause." The court did so instruct the jury. Paragraph 19 reads: "The following is deemed an adequate cause: insulting words or conduct of the person killed toward a female relation of the party guilty of the homicide." This is all of paragraph 19, and we find in it no such language as stated in appellant's motion for a new trial. The court does not use the words "could be" but instructs them this is adequate cause, and the charge is in the language of section 4 of article 1132, Penal Code.

The only other complaint of the charge on manslaughter reads as follows: "Because the court erred in his charge on manslaughter in the twentieth, twenty-first and twenty-second paragraphs thereof, for the reason all the testimony showed that defendant, if he committed the kill-

ing, did so immediately after the deceased left his house and after he had insulted his sister and attempted to ravish her, and that he committed such killing as soon as he could get to the deceased, and the charge of the court to the effect that the killing could not be reduced to manslaughter unless the killing occurred as soon as he saw the deceased or as soon as he learned and heard of the insults and attempted rape on his said sister." In the first place we will say that the evidence does not show that "he committed the killing as soon as he could get to the deceased." The evidence offered by the State, if true, conclusively showed that appellant was present and heard and saw all that was said and what took place, and while deceased was in the room with him. Willie Aimes testified: "I heard Commie say he wouldn't let no God damn man come to his house and do that way, and Red said, 'No'; no God damn man couldn't run over his sister that way. He said something else about that he would get even or something—I don't know exactly what he said. He said no man couldn't run over his sister and get off that way—get even with them, something like that. When Red and Commie was talking, I was in the kitchen. No, sir, they was not in the kitchen; they was in the front room. That was while Norman Reeves was there that I heard them talking. At the time they were talking Norman was setting there in front of the fire place with his head hung down like this (indicating) like he was asleep. That was in the same room where they was. It was about twenty minutes after that before Norman Reeves left, ten or fifteen minutes." Arthur Cato testified he was present and heard a conversation between appellant and Commie in substance the same as above, and appellant said he would get even with him (deceased). That deceased was there present in the house at the time, in the same room with defendant, and that deceased did not leave the house for some time, when appellant followed along behind him. Thus it is seen by the State's evidence that appellant was present and saw and heard everything that took place; that deceased was then there sitting in a chair in his plain view. Furthermore it is shown that appellant and deceased were seen in conversation with each other after they left the house that evening, and appellant, even according to his sister's testimony, knew of the insults then they claim deceased had been guilty of, and yet at this time appellant is not so angry because of the insults as to cause him to resent the insults. In fact, it is clearly shown by all the facts and circumstances in the case that it was at a different time and place, and after the shades of night had fallen that deceased met his death by being struck a blow in the back of the head at the base of the brain. The court instructed the jury: "Now, remembering the foregoing definition of manslaughter, if you shall find that the defendant, either alone or acting together with one Commie Lloyd, killed Norman Reeves, by striking him with an iron pin, or by ways, means and instrument unknown, but if you shall find that before such killing the defendant had been informed of insulting words or conduct of deceased towards a female relation of defendant, and if

you shall find that by reason thereof the mind of . the defendant was aroused to a degree of anger, rage, sudden resentment or terror, which rendered it incapable of cool reflection, and if you shall find that the killing, if any, was upon the first meeting of defendant with deceased after being informed of such insults, if any, or if you have a reasonable doubt as to whether the killing, if any, thus occurred, you will convict the defendant of manslaughter." This charge is in accordance with article 1133 of the Penal Code, which reads as follows: "When it is sought to reduce the homicide to the grade of manslaughter, by reason of the circumstances specified in the fourth subdivision of article 1132 of the Penal Code it must appear that the killing took place immediately upon the happening of the insulting conduct, or the uttering of the insulting words, or so soon thereafter as the party killing may meet with the party killed, after having been informed of such insults." The charge of the court on manslaughter is in strict accord with this provision of the Code, and is not subject to the above recited criticisms, and these are the only grounds of complaint of the charge on manslaughter to be found in the motion for a new trial.

The charge on reasonable doubt is in accord with the statutory provision in that respect, and the criticism of this part of the charge is without merit. Article 785, Penal Code.

In the first two bills of exception appellant complains of the action of the court in refusing to sustain his challenge for cause as to veniremen J. H. Ingram and Jno. C. Lee, Jr. In approving the court says: "Both of said jurors stated upon their voir dire examination that they had heard that Reeves was killed on the T. & P. track near Mineola by a negro and was of the opinion that some one killed him, but had no opinion as to who killed him and no opinion as to the guilt or innocence of the defendant on trial." As thus qualified the bills present no error. In addition to this, it is not shown by the record that either of these two men served on the jury, or appellant was forced to accept any objectionable juror, and under such circumstances no error is presented.

In the next bill it is complained that the witness Willingham was permitted to testify that he found tracks leading from the place where deceased was found and traced these tracks in the direction of and near to the house of Lucy Thomas. As it was further shown by other witnesses that appellant was at the house of Lucy Thomas the night of the homicide, and came there between 8 and 9 o'clock, and on this trip admitted to Lucy Thomas that he and Commie Lloyd had had a fight with deceased, and took his money, ring, etc., the court did not err in admitting the testimony.

The bill relating to the testimony of the witness, Alice Briscoe, presents no error as approved by the court. The court quotes the pages of the transcript showing what the testimony of this witness really was, and by turning to it we find he is correct.

There was no error in permitting the county attorney to testify that the witness, Lucy Thomas, was not in any manner coerced into making

the statement she did make. Lucy Thomas, after testifying to material facts for the State, testified on cross-examination that she had been forced and coerced into making these statements, and those who were present at the time she says she was coerced were properly permitted to show that no harshness or coercion was used, or attempted to be used. Nor was the argument and criticism of this witness, Lucy Thomas, and her testimony by State's counsel such that could have in any manner injuriously affected appellant's case. The court, upon objection being made, instructed the jury not to consider such matters. Appellant requested no other or further instructions in the premises, and in the absence of a request for instructions, if the court had not so instructed the jury, this would not present reversible error. The witness, Lucy Thomas, testified to no fact for defendant—her testimony, if true, was in support of the State's case, and any adverse criticism of her testimony by the State could and would only result to the advantage of appellant.

There are other complaints in the motion for a new trial in regard to admitting testimony, but as no bills of exception are reserved, we can not review those grounds.

We have carefully read the record, and no error in the trial or conduct of the case is pointed out in the motion for a new trial, and the evidence amply supports the verdict.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 4, 1914.—Reporter.]