RUSSELL v. BAILEY.    (No. 1456.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 17, 1927. Rehearing Denied Jan. 26, 1927.)

1. **Appeal and error ⊜⇒1050(1)—Incidental testimony of plaintiff in auto collision case that insurance man came to him in field held not to constitute error, as prejudicing jury.**

Testimony, on cross-examination of plaintiff in action for injury from collision of automobile with horse that he was riding on highway, "I do not know anything about it, more than that insurance man came to me in the field plowing," which was merely an incidental way of fixing date, and in no way connecting defendant with the insurance man, *held* not to constitute error as prejudicing jury.

2. **Appeal and error ⊜⇒1053(2)—Any prejudice from plaintiff testifying insurance man came to him held removed by court withdrawing it from jury.**

Any prejudice from plaintiff in auto collision case testifying that insurance man came to him in field *held* removed by court withdrawing statement from jury.

3. **Appeal and error ⊜⇒1045(3)—Overruling challenge for cause to juror requiring exhaustion of peremptory challenges held not error, in absence of showing party was required to take objectionable juror.**

Overruling challenge to juror, who on his examination said he had such an opinion of the merits as would require evidence to remove, *held* not error, though the challenging party was thus required to use his last peremptory; it not being shown that he was required on account of exhaustion of peremptory challenges to take an objectionable juror.

4. **Trial ⊜⇒350(7)—Issue of discovered peril of horseman injured by automobile held properly submitted as raised by evidence.**

Issue of discovered peril, in action for collision of automobile with horse ridden by plaintiff on highway, *held* properly submitted as clearly raised by the evidence.

5. **Appeal and error ⊜⇒1062(1)—Finding against defendant on discovered peril renders harmless any error in submitting contributory negligence.**

Any error in submitting defenses of contributory negligence was rendered harmless by finding against defendant on the issue of discovered peril.

6. **Trial ⊜⇒352(4)—To require submission of issue of unavoidable accident raised by evidence, it need not have been specially pleaded.**

It is not necessary that issue of unavoidable accident raised by evidence should have been specially pleaded to require its submission.

7. **Trial ⊜⇒352(4)—To require submission of issue of unavoidable accident, it must be raised outside of and not as corollary of issues raised by plaintiff's pleadings.**

The issue of unavoidable accident, to require submission, must be raised outside of and not as a corollary of the issues raised by plaintiff's pleadings, and so is not raised when plaintiff pleads certain facts as constituting his cause of action, and defendant merely introduces evidence that he was not negligent in the respects charged; but there must be evidence that accident happened from some unknown cause, or in a manner which cannot be explained, or under circumstances differing from those relied on and constituting part of plaintiff's case, and which rebut the charge of negligence.

8. **Trial ⊜⇒351(5)—Unavoidable accident need not be specially submitted when the facts relied on have been called to jury's attention in general submission.**

The issue of unavoidable accident need not be specially submitted, where facts relied on have been directly and affirmatively called to jury's attention in the general submission.

9. **Trial ⊜⇒350(6)—Evidence in auto collision case held not to raise issue of unavoidable accident relative to special submission.**

Evidence in action for collision on highway of automobile with horse ridden by plaintiff *held* not to raise issue of unavoidable accident, so as to require its special submission.

10. **Damages ⊜⇒158(1)—Petition held to plead "concussion" of brain so as to allow evidence thereof from injury.**

Petition in action for personal injury by use of word shook *held* to have pleaded "concussion" of brain, allowing evidence thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Concussion.]

11. **Trial ⊜⇒125(4)—Statement of plaintiff's counsel that defendant's better circumstances in life did not give him license to disregard life held proper argument on defendant's evidence.**

Statement of counsel for plaintiff, in action for collision on highway of defendant's automobile with horse ridden by plaintiff, that defendant's better circumstances in life did not give him license to disregard human life, *held* proper argument on defendant's evidence.

12. **Trial ⊜⇒133(6)—Error in improper argument held rendered harmless by charge to disregard.**

Error in improper argument in action for collision on highway of automobile with horse ridden by plaintiff *held* rendered harmless by charge to disregard them.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Action by Ellis Bailey against C. M. Russell. Judgment for plaintiff, and defendant appeals. Affirmed.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Rowe & Rowe, of Livingston, and Thomas, Frank, Milam & Touchstone, of Dallas, for appellant.

F. Campbell and Z. L. Foreman, both of Livingston, for appellee.

WALKER, J. On September 7, 1924, appellee, while riding his horse on one of the public roads of Liberty county, met appellant, who was driving an automobile. Appellee's horse became unmanageable, and as a result there was a collision between the car and the horse, resulting in damages to the horse and to appellee. This suit was instituted to recover damages for the injuries thus inflicted, and resulted in a judgment in favor of appellee for $2,500.

The grounds of negligence alleged by appellee and found by the jury were that appellant failed to reduce the speed of the car after observing the frightened and unmanageable condition of appellee's horse; that he failed to stop the car; and that he failed to drive his car far enough to the right of appellee to avoid striking him.

Appellant answered by the usual exceptions, a general denial, and special pleas of contributory negligence.

All defensive issues submitted to the jury were found in appellee's favor.

The following testimony was elicited by appellant during his cross-examination of appellee:

"There was a sort of a steep place on the road right along there. I took Mr. Ted Rowe up there this last spring, and went out there on the road and showed him where I was. I went up there with him. I told him that I did not know just where I was when that car came up, because I did not know a thing about it. I did not tell Mr. Ted Rowe that right where he is in that picture was where my horse was when that car came up. I told him I did not know a thing about it. I told everybody that. I went out there with him, and he asked me where the car was and where the horse was, and I told him I did not know. I told everybody I did not know where I was. He and I went there. He knew where the place was. I went with him there. I told him I had never been there since I had got hurt. I had not been along there since I got hurt. I do not go there much now. Unless I am in a car or wagon I always go through the woods.

"Mr. Rowe: I am going to tell you the truth. He came there, and I had my wagon standing at the end, and he told me to come and go down there with him, and I went with him down there. As to when it was he saw me, and I was out in the field plowing, this last spring, I do not know anything about it, more than that insurance man came to me in the field plowing."

[1, 2] Appellant immediately reserved his bill of exception to appellee's statement, "I do not know anything about it, more than that insurance man came to me in the field plowing," and moved the court to discharge the jury "because such unresponsive answer discloses on its face that it is so inflammatory and so prejudicial it would be impossible to get a fair trial from this jury." Counsel for appellee stated in reply that they did not object to the court instructing the jury not to consider the remark, to which counsel for appellant replied:

"You can't cure a thing of that sort, and the mere mention of it by the court in the presence of the jury is prejudicial."

Then the following occurred.

"The Court: Overrule the motion. If you want to withdraw the remark I will withdraw it.
"Mr. Touchstone: We stand on our motion."

Thereupon the court made the following ruling:

"I sustain the objection that he urged while ago to the last question and answer, because it was not in response to the question asked."

To sustain his proposition that this remark of the witness was error, appellant cites the following authorities, none of which are even remotely in point, viz.: Levinski v. Cooper (Tex. Civ. App.) 142 S. W. 959; Ice Co. v. Barnett (Tex. Civ. App.) 212 S. W. 236; Wichita Falls Motor Co. v. Meade (Tex. Civ. App.) 203 S. W. 71; Beazley v. McEver (Tex. Civ. App.) 238 S. W. 949; Debes v. Greenstone (Tex. Civ. App.) 247 S. W. 289; Acola v. Magnolia Petroleum Co. (Tex. Civ. App.) 261 S. W. 384; Lange v. Lawrence (Tex. Civ. App.) 259 S. W. 261. The remark complained of was merely an incidental way of fixing the date, and in no way connected appellant with the insurance man. There is not a scintilla of evidence in the record, even by the remotest inference, to show that the appellee, an old, ignorant negro, or his attorneys were seeking to gain an undue advantage of appellant, nor to inject this improper issue before the jury. The facts of this case are absolutely on all fours with Horton v. Benson (Tex. Civ. App.) 266 S. W. 213, sustaining the ruling of the court.

And, in addition, we would say that the custom of carrying casualty insurance is now so universal and so generally recognized that a mere incidental reference to the fact that the defendant was thus protected should not constitute error in the absence of a showing of injury. Of course, where a plaintiff willfully injects that issue, seeking an undue advantage, a different question arises. But where, in the orderly development of the case, a witness makes a statement, even if it goes to the extent of showing that the defendant was protected by insurance, it should not be held to be an error beyond the power of the court to withdraw. It would be an anomaly in law to destroy the verdict because it was made to appear, in a way not reflecting on the plaintiff, that the defendant had done nothing

more than comply with the custom of prudent men. It does not appeal to us as sound reasoning to hold as a matter of law, which is appellant's proposition, that the jury system and the average juror, duly vested with the greatest prerogative of the law, have so deteriorated in moral responsibility as to be unable to obey a simple instruction of the court. In this case the court offered to, and, in fact, did, withdraw the statement from the jury, thereby removing its sting, if in law or fact any existed.

[3] The juror Sailor, while being tested as to his qualifications, testified that he had such an opinion of the merits of the case as would require evidence to remove. On this ground he was duly challenged by appellant and the challenge overruled. Whereupon appellant excused him by a peremptory challenge. In doing so appellant exhausted all his peremptory challenges, but he has made no showing that he was forced to take an objectionable juror by reason of having exhausted his peremptory challenges in excusing the juror Sailor. The ruling was not error. G. H. & S. A. Ry. Co. v. Thornsberry (Tex. Sup.) 17 S. W. 521; Routledge v. Elmendorf, 54 Tex. Civ. App. 174, 116 S. W. 160, 161; McIntosh v. Atchison, T. & S. F. Ry. Co. (Tex. Civ. App.) 192 S. W. 285; Horn v. Price (Tex. Civ. App.) 200 S. W. 590; Missouri, etc., R. Co. v. Steele, 50 Tex. Civ. App. 634, 110 S. W. 171; Gomez v. State, 75 Tex. Cr. R. 239, 170 S. W. 711; Thompson v. State, 72 Tex. Cr. R. 659, 163 S. W. 973; Byrd v. State, 69 Tex. Cr. R. 35, 151 S. W. 1068.

[4] The court did not err in submitting the issue of discovered peril. That issue was clearly raised, as shown by the following excerpts from the testimony:

Mr. J. L. Pitts testified to statements made by appellant in his presence as follows:

"I was in attendance on court during the June term of last year. I heard a conversation between the defendant, Mr. Russell, and Mr. Foreman and Mr. Campbell in Mr. Foreman's office in June, 1925. In that conversation Mr. Russell said that when this accident occurred he was driving north on highway 35, in the direction of Lufkin; that when he first saw the plaintiff, Ellis Bailey, he was a distance of approximately 100 yards from him, and when his attention was first called to him he noticed his horse prancing and rearing up—the horse that the plaintiff was riding; that at the time he was making approximately 30 or 35 miles an hour; that he was traveling north; that he continued to drive at the same rate without diminishing his speed any until he got to where plaintiff was; that during the time the horse of plaintiff had continued to prance and rear; and that when defendant got up to plaintiff the front fender of his car struck the hind leg of the horse, and as a result of the blow the horse and plaintiff both fell, and then he applied the brakes. Up until that time he said he did not apply the brakes. He stated that the car he was driving was a Buick car, with four-wheel brakes. He said the brakes were in good condition."

Mr. Cade Bethea, testifying to the same conversation, said:

"In that conversation Mr. Russell stated how the injury to Ellis Bailey occurred. As I recall Mr. Russell's statement there, he said he was going up there where the accident happened about 30 or 35 miles an hour, and he saw this negro on horseback; that the horse was prancing, and seemed to be unmanageable; and that he saw him about 100 yards before he got to him; that he did not attempt to slow down; that he struck the horse at about the same speed he was making when he first saw him about 100 yards before; and that the compact between the car and the horse threw the horse, and that threw the rider off; and that he then applied the brakes to his car and ran some 30 or 40 yards on farther and stopped. My recollection is he said he was driving a Buick car, with four-wheel brakes. He said the brakes were in good shape. He said he did not make any effort to reduce the speed before striking the plaintiff's horse, and then he applied the brakes and stopped the car 40 yards beyond.

"I think I have stated that Mr. Russell's statement was that the plaintiff's horse seemed to be unmanageable when he first saw him, and was prancing from one side of the road to the other when he first saw him some 100 yards before. As to whether he stated what the condition of the horse was from the time he was struck, the only thing I recall, Mr. Russell said he saw him some 100 yards before, and when he first saw the horse he was prancing from one side of the road to the other, and seemed to be unmanageable, and he did not attempt to slow down or anything of that sort. As to how far he said that condition continued, as I recall, from the first time Mr. Russell saw him until he struck the horse he seemed in the same unmanageable condition—seemed unmanageable until he struck him. That is the way I understood Mr. Russell's statement."

It is not necessary to analyze the foregoing evidence to show that the issue of discovered peril was clearly raised.

[5] Appellant pleaded many issues of contributory negligence, some of which, though raised by the evidence, were not submitted separately to the jury. The refusal by the court of his special issues grouping such contributory facts is assigned as error. The errors assigned were rendered harmless by the finding on the issue of discovered peril, for, as appellant himself says, quoting from his brief:

"The doctrine of discovered peril is, of course, well recognized in this state, and the legal effect thereof, of course, is to make a finding of contributory negligence immaterial."

Appellant's proposition is fully sustained by Judge Greenwood's holding in Wilson v. Southern Traction Co., 111 Tex. 361, 234 S. W. 663, wherein it is held that a finding on the issue of discovered peril excludes "the defense of contributory negligence."

[6-9] Appellant complains of the court's refusal to submit the issue of "unavoidable accident," and supports his assignment with the following evidence from the record:

The plaintiff, Ellis Bailey, testified in part as follows:

"I got hurt on the highway here in September, 1924. I was on the highway then, taking a horse down to the lot for Mr. Clark. I was riding horseback. When I got down there to where I got hurt the horse got frightened and commenced cutting up. When he got frightened I reined him up and tried to get him out of the road. I do not know how long it was after the horse got frightened before I got hurt. She got frightened, and I was trying to rein her out of the road, and the next thing I knew the car was right into me. During that time the horse was prancing right by the left-hand side of the road, from the center of the road and back; back and forth in the road. If he ever got off the road during that time I do not recollect."

The witness Chester Collins, who was an eyewitness to the accident, testified as follows:

"My name is C. B. Collins. I am 36 years old past. My place of residence is Lufkin, Angelina county, Tex. I am a lawyer by profession. I am acquainted with C. M. Russell, and he lives at Lufkin, where he also resided in September, 1924, and I have known him, as I recall, about 7 years. As I recall, I met Mr. C. M. Russell on or about the ninth day of September, 1924, in Livingston. I came here on the passenger train from Houston some time before 12 o'clock a. m., and he met me at the station. I believe it was on a Sunday.

"Mr. Russell and I made the trip together that day from Livingston to Lufkin, Tex. As previously stated, we came to Lufkin over the present highway from Livingston to Lufkin, which was in a northerly direction, and we were riding in a Buick four or five passenger car. We met two negroes traveling in the opposite direction, near the town of Leggett, Tex. One of the negroes was named Ellis Bailey, as I recall, but I do not remember the other negro's name, although I asked him his name at the time, and he told me. He also stated that he works at the sawmill at New Willard. The negroes were going in the opposite direction from which we were traveling. They were on horseback, each being on a separate horse. The negroes were probably 250 or 300 yards from us when we first saw them, or at least when I first saw them; anyway they were a considerable distance. It is hard to give the width of the road, but it was the ordinary highway as it now stands about a mile or a mile and a half north of New Willard, but I would judge the graveled part of the highway at this point to be about 25 feet wide where we met.

"As we approached the negroes they drew their horses up on the extreme left of the highway coming north, and Mr. Russell steered his car over to the right side of the highway coming north. When I first observed the negroes' horses they were just jogging along, probably walking fast or in a slow trot, and as we approached the negroes got over on their right side of the highway and stopped, or apparently came to a stop. Just about the time the horses came to a stop the one which Ellis Bailey was riding seemed to become excited. My first attention to the horse showed that he was acting like a horse sometimes does when he has a tender mouth and is upset about a severe bit in the mouth; anyway he commenced throwing his head up and down and began to rear up and down, first the front and then the rear of his body, and at the same time he commenced backing right across the highway to the negro's left and to our right, and he was doing this in a very excitable and uncontrollable manner. The negro was trying to control the horse, but the more he tried to control him the worse he got. I would judge the car was about 50 yards from the negro when the horse began backing. I could not estimate the speed at which the horse backed, but he was jumping up and down and backing at the same time. He was not going slow.

"I would judge the automobile in which we were traveling was going 30 or 35 miles an hour. The horse and automobile collided on our right-hand side of the highway, the horse not being very far from the center of the highway, and as the automobile was moving forward toward the north the horse backed against the left front fender of the car so that the fender struck the rear of the horse."

The defendant, C. M. Russell, testified in part as follows:

"I was on my way from Livingston to Lufkin on the 9th day of September, 1924, when this accident occurred. I was making that trip in an automobile. I was driving a Buick car. It was a touring car. Mr. Collins was with me. He and I were alone in the car together. We left Livingston about 1 o'clock, or 2. It was in the afternoon; right after lunch. We were about a mile this side of Leggett when I saw these darkies. The road is straight there. I identify the place that this picture, Exhibit 1, shows as the place where the accident happened. I first saw the darkies about 100 yards up the road there, in the ditch—grassy part of it. They were on the left-hand side of the road; on my left-hand side. The horse was right at the place where Mr. Ted Rowe is standing in the picture. I glanced up the road and could see the negroes coming down on their horses. One was riding behind the other, kind of Indian file. I next saw them when I ran into them. From the time I first glanced at them until I was opposite them I was watching the road. I was driving the car. I was driving my car on the right-hand side of the road. I was driving my car as far over to the right edge of the gravel as I could get. Their horses were over in the ditch when I first saw them. When I got up to the horse he suddenly backed into the car—this left fender here. When I got opposite the horse he just backed into the car suddenly."

When raised by the evidence, it is the duty of the court to submit the issue of "unavoidable accident," even without a special plea raising that issue, for "unavoidable accident" is a complete answer to the charge of negligence and is involved in the plea of general

denial. Railway Company v. Washington, 94 Tex. 510, 63 S. W. 534. But it must be raised outside of and not as a corollary of the issues raised by the pleadings of plaintiff. When the plaintiff pleads certain facts as constituting his cause of action, evidence on the part of the defendant that he was not negligent in the respects charged against him does not raise the separate and distinct issue of "unavoidable accident," for he has thereby only refuted the plaintiff's case. As to the issues of negligence made by the pleadings, it is simply a question of negligence vel non, and a charge so submitting the issues fully protects the rights of the defendant. The issue of "unavoidable accident" arises only when "there is evidence tending to show that the accident in controversy, which is charged to have resulted from the negligence of the defendant, happened from some unknown cause, or in a manner which cannot be explained, or under circumstances differing from those relied on and constituting a part of plaintiff's case, and which circumstances rebut the charge of alleged negligence for which the defendant is responsible." Traction Co. v. Craig (Tex. Civ. App.) 250 S. W. 733. See, also, Eastern Texas Electric Company v. Hunsucker (Tex. Civ. App.) 280 S. W. 887. The plaintiff cannot recover on acts of negligence not alleged. Such alleged acts, when supported by proof, must be submitted to the jury. It is also the duty of the court, in presenting such issues to the jury, to safeguard the rights of the defendant by proper charges. From the standpoint of both parties, such a charge sufficiently calls to the attention of the jury the issues made by plaintiff, and under such a charge it is merely for the jury to find for or against the issue of negligence. But while the plaintiff cannot recover beyond his allegations, the entire world of facts is open to the defendant to rebut the charge of negligence as made against him. If he can show that the accident happened from some unknown cause or in a manner which cannot be explained, or under circumstances different from those pleaded, he has put into the case issuable facts that the court's charge submitting the plaintiff's case does not call to the attention of the jury in an affirmative way. While it is called the defense or issue of "unavoidable accident" or merely "accident," it is nothing more than a practical application of the proposition restated by Judge Strong, speaking for the Commission of Appeals in Railway Company v. Wallace, 206 S. W. 505:

"The rule of practice is well established that a party is entitled, when he requests it by correct instructions, to have the facts establishing his cause of action or grounds of defense affirmatively stated by the court to the jury."

All such issues once properly submitted, with the facts properly called to the jury's attention, should not be resubmitted. But where, under the general submission, facts excusing defendant and relieving him of the charge of negligence have not been called directly and affirmatively to the jury's attention, this should be done. The Washington Case, supra, and Railway Company v. Rowe (Tex. Com. App.) 238 S. W. 908, and Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080, are directly in point on the proposition discussed. In the Washington and Rowe Cases, it was held error to refuse to submit affirmatively facts not pleaded but explaining the accident on grounds not involving negligence, and in the McClure Case it was held not error to refuse to submit the issue of "unavoidable accident" on the facts clearly and properly called to the attention of the jury in the charge as actually submitted.

Now, in this case the evidence brought forward by appellant does not show that plaintiff's injury was caused by some unknown cause or in a manner which was not explained, or under circumstances differing from those relied on and constituting plaintiff's case. This evidence was offered by defendant to rebut the conclusion of negligence which the plaintiff had drawn from the facts of the accident, and in explaining his part in the accident, defendant has not offered any theory not reflected in plaintiff's pleadings. The facts as developed were properly submitted to the jury. As an independent issuable fact, appellant was not entitled to have the jury again weigh these identical facts to deduce in his favor a finding of "unavoidable accident." That would be giving the jury two separate and distinct opportunities to find in appellant's favor on the same facts.

[10] Over defendant's objection that the issue was not raised by the pleadings, the court received evidence offered by plaintiff that the injury received by him resulted in a concussion of the brain. This evidence was properly received, as the issue was sufficiently pleaded, as follows:

"Plaintiff would further show to the court that the blow received to his head when striking said highway, which fractured the skull of plaintiff as herein alleged, caused a depression of the skull of plaintiff at the place where so fractured, thus producing a pressure on his brain, and greatly shook and bruised the brain of plaintiff."

In 12 Corpus Juris, 396, concussion is thus defined:

"*Concussion.*—The act of shaking or agitating, especially by the shock or impulse of other bodies.

"In medical jurisprudence, the shock or agitation of some organ, by a fall or like cause; as a concussion of the brain."

Applying this definition to plaintiff's petition, it is clear that the issue was pleaded. Appellant properly excepted to the follow-

ing statements made by counsel for appellee in their arguments to the jury:

Statement No. 1: "Gentlemen, it may be that he is an old negro, and it may be that Mr. Russell is a white man, in better circumstances in life, but that doesn't give him license to disregard human life, in total disregard of the rights of others, and run his car over him."

Statement No. 2: "Now was Mr. Russell so high-toned that he had to drive his car on the gravel road and take the chance on taking the life of that old negro, rather than put two wheels on a little grass or dirt? Gentlemen, we folks have driven over these sandy roads all our lives, and any man that would use ordinary care would get two wheels over there on that grass rather than take chances on taking the life of that old negro."

Statement No. 3: "We would feel lonesome if we were to cease to hear those objections."

Statement No. 4: "Now, gentlemen, there is not a man on this jury that has ever driven a car but what knows if there is something that is likely to move across the road you are going to bring that car down slow enough so you won't hit it. Now, gentlemen, if the drivers of cars over the county here should pursue the practice that was used in this case the cemeteries would have to be enlarged very rapidly."

Statement No. 5: "Now gentlemen, is it right to say that because you are in that condition, because you are still trying to earn a little bit, that you ought not to give him any damages, although we know you haven't a thing to live on, although we haven't offered to help you in any way?"

Statement No. 6: "Counsel for defendants has got that man taking down mine and Fox Campbell's speeches."

[11] The first statement was a proper argument on the evidence as given by appellant, wherein he said:

"I was about the edge of the gravel. I should say there was about two feet space between the edge of the gravel and the shoulder where it slopes off to the ditch. There is a space of two feet there. That two feet that I spoke of over there on the edge of the road was good road. I struck the hind leg of the horse. That was the left fender on the outside that struck the horse. It mashed in the front end of the fender—the outside corner of it. I should say it mashed in about four inches of it. The fender is the extreme outer part of the car. If only four inches of my car struck the horse, and that brings the left-hand four inches, if I had gone four inches farther to the right, I reckon I would not have missed the horse."

[12] As to all the other statements, the court promptly instructed the jury to disregard them. All the arguments excepted to were proper under the evidence, except statements Nos. 3 and 5, which were improper; but as to these the error was rendered harmless by the charge.

Finding no error in the record, the judgment of the trial court is in all things affirmed.