traneous evidence to aid in description in an ambiguous deed so as to make it sufficient under Art. 1288, R.S.1925, of our Statutes of Conveyances. See Matney v. Odom, 147 Tex. 26, 210 S.W.2d 980, and the many cases there cited.

Petitioners argue that there is no "key" in the deed here in question to which extraneous evidence may be directly tied to determine the interest of the grantor. In support they cite Carter & Bro. v. Ewers, 133 Tex. 616, 131 S.W.2d 86, 87, 123 A.L.R. 908. In that case the language was "'an undivided interest in and to a subdivision of 200 acres of a survey in the name of Swiny, situated in the County of Polk, State of Texas.'" We held that the language offered no key because it is nowhere indicated what undivided interest was meant and there were no words of ownership in the grantor.

The language here is different. It plainly says that the land is "out of the M. B. Lamar Survey, Abstract No. 704, situated in the County of Grayson, State of Texas." In the second sentence, supra, grantor says that he intends to convey his one-third interest in and to the above described property. Thus we are furnished a key in the language of the deed itself, susceptible of explanation by parol evidence, by which the property can be located on the ground. This coupled with the proof that the land in controversy was all the land he owned in Grayson County at the time of the deed, was a sufficient description. Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222.

It seems that the issue here was settled as long ago as 1895, in Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551. In that case Chief Justice Gaines said that an instrument which purports to convey that part of a certain tract which is owned and claimed by the grantor is not void upon its face, for it may be shown by extrinsic evidence what particular part grantor so owned and claimed.

It follows that the judgments below are affirmed.

ROOSTH & GENECOV PRODUCTION COMPANY, Inc., Appellant,

v.

Loren Lee WHITE et al., Appellees.

No. 6811.

Court of Civil Appeals of Texas.

Texarkana.

June 16, 1955.

Rehearing Denied July 7, 1955.

334

Strasburger, Price, Kelton, Miller & Martin, Dallas, Waldrop & Shaw, Henderson, John D. Glass, Tyler, for appellant.

Gordon R. Wellborn, Rex Houston, William L. Ferguson, Bath & Turner, Henderson, for appellees.

FANNING, Justice.

This is a damage suit for personal injuries and is the second appeal of appellant in this cause. Judgment for plaintiff and intervener in the amount of $30,000 was affirmed by this court by opinion reported in Tex.Civ.App., 257 S.W.2d 140, which was reversed and remanded by the Supreme Court of Texas in an opinion reported in 152 Tex. 619, 262 S.W.2d 99.

In the second trial the jury found certain issues of negligence in favor of plaintiff Loren Lee White and found damages in his favor in the amount of $50,000. Judgment therefor was rendered against appellant and in favor of plaintiff and in favor of the intervener, American Automobile Insurance Company, to the extent it had paid certain workmen's compensation insurance benefits to the plaintiff. Appellant's motion for new trial was overruled and appellant has appealed.

The appellant, Roosth & Genecov Production Company, Inc., is an oil company which among other things causes its leases to be drilled, managed and produced, etc. One of its such leases was the Curbo lease in Rusk County, Texas, and in causing the drilling of Well 17 on said Curbo lease, appellant caused a fill of fresh dirt and sand to be constructed by A. R. Walker and then moved its derrick and foundation blocks with its own employees to the Curbo lease, where with the help of defendant's trucks and truck drivers, A. M. Sale, a rig-building contractor, erected the derrick. Immediately after the erection of the derrick a drilling crew of Carter-Jones Drill-

ing Company moved onto the lease location and began the drilling of a well at the instance of appellant. Plaintiff White was a member of this drilling crew. During the drilling operations the derrick collapsed and unusually severe and serious injuries were sustained as a result thereof by plaintiff White who was 23 years of age at that time. His injuries included fractures of the left thigh, left humerus, left shoulder bone causing paralysis in his left arm, causing it to shrink in size and his left hand to be deformed, and a fracture of the right femur. There was testimony to the effect that he had sustained a serious brain injury, that he was required to stay in bed about one year after the injuries, that he was totally and permanently disabled, and medical testimony to the further effect that such condition was permanent and static as to any further recovery. There was also testimony to the effect that the doctor, hospital and medical bills during the first 20 months after his injuries were in excess of $5,000.

Plaintiff and intervener sued defendant for the sum of $224,862.80. The jury awarded damages in the amount of $50,000. The court in its judgment apportioned the sum of $12,661.00 from this judgment in favor of intervener, American Automobile Insurance Company, who had paid workmen's compensation insurance in that amount to plaintiff White. The plaintiff White had a life expectancy of 43.75 years under the record and prior to and at the time of the injury earned from $75 to $100 per week and had an income of from $3,000 to $4,000 per year. There is no point presented by appellant that the verdict of the jury was excessive.

On the issues of negligence and proximate cause, the jury found that defendant furnished a southeast corner foundation block of irregular dimensions and thickness; defendant had knowledge of this condition; the furnishing of such block was negligence and was a proximate cause of plaintiff's injuries; that defendant caused the southeast corner foundation block of the derrick to be placed on a soft, sandy fill; that defendant had knowledge that the block was so placed; that such action was negligence and a proximate cause of plaintiff's injuries; that the derrick was rusty when furnished by defendant; that it was not rusty to the extent that it would not have been furnished by a person of ordinary prudence; that defendant failed to properly inspect the derrick; that such failure was negligence but was not a proximate cause of plaintiff's injuries.

Grounded upon the jury's findings of negligence and proximate cause with respect to the furnishing of a corner block of irregular dimensions and thickness and the placing of a corner foundation block in a soft, sandy fill, and defendant's knowledge thereof, as above shown, the court entered judgment for plaintiff and intervener for the amount of damages found by the jury as above shown.

Appellant by its 21st point contends that the verdict of the jury finding appellant to be guilty of negligence proximately causing plaintiff's injuries, is so contrary to the overwhelming preponderance of the evidence as to be clearly wrong, etc. We have carefully examined the statement of facts, which with the exhibits contains 906 pages, and we think the jury's findings of negligence and proximate cause against appellant find ample support in the evidence. We think this point is without merit and same is overruled.

Appellant contends by its 1st, 2nd, 3rd and 4th points (in essence) that insurance was wrongfully injected into the case to its harm by the testimony of plaintiff's witnesses Dr. Shipp and Dr. Sueh; that the court erred in not sustaining appelllant's motion for mistrial by reason thereof; that the court erred in not permitting appellant to show that the insurance company examination referred to by Dr. Shipp was one made by intervener and not by any one connected with appellant and that the court erred in not permitting appellant to show that Dr. Sueh's medical bill was paid by intervener insurance company and not by any one connected with appellant. Dr. Sueh, who testified before Dr. Shipp, testified on direct examination as follows:

"Q. Now, doctor, do you recall what the amount of your bill was in this case? A. I think it was $125.00.

"Q. Has that bill been paid by this boy or someone in his behalf, doctor? A. Paid by the company."

Appellant made no objection to this testimony when it was given and at no time requested the trial court to instruct the jury to not consider it. Later, however, appellant moved for mistrial by reason of this evidence and the testimony of Dr. Shipp hereinafter related, and also moved that it be permitted to show that intervener paid Dr. Sueh's bill and that no one connected with appellant paid it, which motions were overruled by the trial court.

Dr. Shipp, a witness for plaintiff, after he had been vigorously cross-examined by appellant's counsel (we here respectfully refer to the record for a full examination of the cross-examination of Dr. Shipp by appellant's counsel wherein Dr. Shipp was questioned with respect to whether he was complying with "medical ethics" in his acceptance of White as a medical patient who had been treated by other doctors and as to whether attorney Wellborn had caused White to be examined by Shipp, etc.), on such cross-examination gave the following testimony, the underlined portion being the testimony complained of by appellant, to-wit:

"Q. When Mr. Wellborn got you in the case did he send you over the time to Tyler on the examination of this young man by Dr. Willingham? A. *I went to his office because the insurance company wanted us to examine him jointly.*

"Q. Didn't Mr. Wellborn send you over to Tyler to examine him with Dr. Willingham? A. He didn't send me anywhere, I volunteered, that boy is my client at that time.

"Q. Mr. Wellborn didn't know anything about it? A. Yes, he knew about it."

The record does not reveal that the appellant objected to the complained-of answer of Dr. Shipp when it was given nor does it reveal that appellant then requested the trial court to instruct the jury to not consider such answer. However after Dr. Shipp's testimony was completed appellant called attention of the trial court to the complained-of testimony of Dr. Sueh and Dr. Shipp and moved first, that it be allowed to prove that Dr. Sueh had been paid by intervener and that the insurance examination in Tyler involved intervener and not appellant, etc., and in the alternative moved for a mistrial because of such injection of insurance, and in that connection also introduced in evidence the examination of Dr. Shipp in the former trial, where he was asked a similar question and did not give an answer similar to the one complained of, etc. (It will also be noted that appellant had been prevented by motion of appellee and ruling of the court thereon to the effect that appellant could not bring out proof with reference to the fact that intervener had paid workmen's compensation insurance to appellee.) Later appellant made a somewhat similar motion, where it also asked for a mistrial and specifically stated that the matter *could not be cured by an instruction from the court,* and also again requested permission to introduce the evidence they had previously requested. From this motion, as well as from a statement of appellant's counsel in the record, it is clear that appellant did not desire and would have objected to any instruction of the court to the jury to not consider the answers complained of and it is also without dispute in the record that appellant at no time ever requested the court to instruct the jury to not consider the answer complained of.

The defendant-appellant itself very directly injected insurance into the record (prior to the testimony of Dr. Sueh and Dr. Shipp complained of) and is the only one who proved that any particular party was protected by insurance, and did this when it introduced in evidence (by the first witness in the trial, A. S. Genecov,

President of appellant Company) as its Exhibit No. 1 the drilling contract between itself and Carter-Jones Drilling Company, plaintiff's employer. This exhibit contains the only clear showing in the record that any party to the suit was protected by insurance. We quote from this exhibit as follows:

"(1) Contractor, at his expense, will furnish a complete rotary rig and all necessary tools to drill and complete said well; and will also furnish all repairs, labor, *insurance satisfactory to Owners,* derrick-floor and all bits except one (1) rock bit. He is to drill a sufficient sized hole so as to set 8⅝ inch surface casing, and the balance of the hole shall be 7⅞ inch hole to bottom."

We quote from 33 Tex.Jur., Sec. 172, Personal Injuries, pp. 279–283, inclusive, as follows:

"It seems impossible to reconcile all holdings of the appellate courts on the subject of reversals—harmless and prejudicial error—for allusions to liability insurance carried by the defendant. But the following general rules may be deduced:

"Where the fact that the defendant carried liability insurance has been improperly injected into the case, and objection has been made, a judgment in favor of the plaintiff will ordinarily be reversed, even though the jury were instructed to disregard the intruded subject. Especially is this rule observed when the evidence is about equally balanced, for, it is said, no amount of admonition can remove the effects of the information thus improperly conveyed to the jury.

"But the foregoing does not mean that a reversal will inevitably result from the mere mention of the subject of insurance, independent of any prejudice, it not appearing that there was a deliberate or persistent attempt to inject an issue not raised by the pleadings, particularly where the allusion was withdrawn from the consideration of the jury.

" 'Where, in the orderly development of the case, a witness makes a statement, even if it goes to the extent of showing that the defendant was protected by insurance, it should not be held to be an error beyond the power of the court to withdraw.' (Russell v. Bailey [Tex.], Civ.App., 290 S.W. 1108, error dis.)

" 'At least this is the rule if there are no further facts in the case which indicate that prejudice may have resulted. And the courts have likewise refused to reverse, even though the injection of the issue was improper, in cases where it did not appear to have any appreciable effect on the verdict, the jury having been instructed not to consider it, and where it manifestly had no effect on the verdict. On the other hand an unsolicited statement by the plaintiff that the defendant said he carried insurance has resulted in a reversal, even though the court instructed the jury to disregard it."

Appellant, among other things, contends that it shows harm and injury by reason of the injection of insurance because the jury in the first trial awarded plaintiff $30,000 damages (where insurance was not mentioned) and the jury in the second trial awarded plaintiff $50,000 damages. Appellees in answer to this argument point out that about six years had elapsed from the time of plaintiff's injuries to the date of the second trial, that plaintiff had been disabled all this time showing a large amount of lost earnings and that at the time of the second trial plaintiff was seriously and permanently crippled and injured with his disability and condition being static with no reasonable hope for recovery. Appellees also contend that the injuries of plaintiff were unusually severe, that the verdict of the jury was not in any way excessive, but that the evidence and plaintiff's injuries would have supported a verdict far in excess of $50,000 damages. We agree with appellees that $50,000 damages

was certainly not excessive under the facts in this case, and we think the facts would support a judgment in excess thereof.

There was no contention made by appellant in its motion for new trial that any juror mentioned or discussed insurance and no juror was placed on the witness stand by appellant with respect to this matter. The trial court heard all of the contentions and counter-contentions of the parties with respect to the question of whether the mentioning or injection of insurance in the case constituted harmful or reversible error, and he overruled appellant's contentions with respect thereto.

It will be particularly noted that the first injection of insurance in the case was made directly by appellant when it introduced its Exhibit No. 1, showing that Carter-Jones Drilling Company, plaintiff's employer, was required to furnish insurance satisfactory to appellant. Therefore before Dr. Shipp and Dr. Sueh testified the record showed that plaintiff's employer was required to furnish insurance satisfactory to appellant. The testimony of Dr. Sueh that the medical bill of plaintiff was paid "by the Company," does not indicate it was an insurance company and this testimony was not objected to when it was given. The testimony of Dr. Shipp as to the insurance company examination, was given by Dr. Shipp on cross-examination by appellant and was not brought out through any fault of appellees or appellees' counsel. This information did not specify any particular insurance company and under the state of the record at that time this evidence as to what insurance company had plaintiff examined was logically referable to intervener insurance company which protected Carter-Jones Drilling Company, and which paid workmen's compensation insurance to plaintiff. And in fact we understand from the briefs of the parties that intervener insurance company actually caused the insurance company examination of plaintiff in question. There is also nothing in the record that appellant was protected by insurance.

The case of Finck Cigar Co. v. Campbell, Tex.Com.App., 134 Tex. 250, 133 S.W.2d 759, opinion by Commissioner (now Chief Justice) Hickman, holds that jurors are presumed to possess ordinary intelligence; that to inform the jury of that which it already knows does not prejudice the rights of a litigant; that it is error to inform the jury that a defendant in a suit for damages for personal injuries is protected by indemnity insurance but that such rule has no application where defendant or one of his witnesses voluntarily brings such information to the jury and is not brought through any fault of the plaintiff or his attorneys.

Whether the injection or mention of insurance under the facts and attendant circumstances hereinbefore related and as more fully shown by the record was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case are questions which we must determine as a matter of our judgment in the light of the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Rules 434 and 503, Texas Rules of Civil Procedure. Considering appellant's points 1, 2, 3 and 4 in the light of the whole record as above outlined, it is our best judgment that the matters complained of therein were not in law reasonably calculated to cause and probably did not cause the rendition of an improper judgment in this cause and that these points do not present reversible error under the following authorities: Rules 434 and 503, T.R.C.P.; Southwestern Freight Lines v. McConnell, Tex.Civ.App., 269 S.W.2d 427, w/ref., n.r.e.; National Biscuit Co. v. Lawrence, Tex.Civ.App., 152 S.W.2d 882, w/ref.; Finck Cigar Co. v. Campbell, Tex.Com.App., 134 Tex. 250, 133 S.W.2d 759; Horton v. Benson, Tex.Civ. App., 266 S.W. 213, affirmed Tex.Com.App., 277 S.W. 1050; Russell v. Bailey, Tex.Civ. App., 290 S.W. 1108, w/dis.; Herrin Transportation Co. v. Peterson, Tex.Civ. App., 216 S.W.2d 245, w/ref.; Russell v. Martin, 121 Tex. 488, 49 S.W.2d 699; Humble Pipe Line Co. v. Kincaid, Tex.Civ. App., 19 S.W.2d 144, w/ref.; Texas Cities

Gas Co. v. Ellis, Tex.Civ.App., 63 S.W.2d 717; Levy v. Rogers, Tex.Civ.App., 75 S.W.2d 304, w/dis.; Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App., 26 S.W.2d 273, w/dis.; Carter-Mullaly Transfer Co. v. Bustos, Tex.Civ.App., 187 S.W. 396, w/ref.; Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938. Appellant's 1st, 2nd, 3rd and 4th points are overruled.

■ Appellant's 5th point is as follows:

"The error of the trial court in refusing to permit the defendant to prove that Carter Jones Drilling Company, employer of the plaintiff, White, had paid for the re-erecting of the rig, after the accident occurred, said conduct on the part of Carter Jones constituting an admission of liability for the collapse of the derrick, since it involved a payment for the damage involved, and not any compromise of disputed claim."

In Tex.Jur., Vol. 17, Sec. 131, page 379, it is stated:

"*Res inter alios acta* (things done between strangers) are incompetent evidence. This rule precludes the introduction of evidence of transactions by which the proponent was in no way affected and to which he was in no sense a party; or evidence of transactions with which the parties against whom it is offered are not connected. Ordinarily therefore, proof of the acts of, or transactions between strangers, or as to independent and disconnected acts or conduct by one of the parties to the suit, or of contracts or other transactions between either of the parties to a suit and strangers, is within the rule of *res inter alios acta* and is inadmissible."

In Tull v. Turley, Tex.Civ.App., 36 S.W. 2d 1101, 1104, w/dis., it is stated:

" 'The rule, "Res inter alios acta," precludes introduction of evidence of transactions by which the proponent was in no way affected and to which he was in no sense a party. Levine Bros.

v. Mantell, 90 W.Va. 166, 111 S.E. 501, 504'. [37 Words and Phrases, p. 479] Pierce v. Wimberly, 78 Tex. 187, 14 S.W. 454; Griffith v. Lake, Tex., 12 S.W. 285."

Appellant's fifth point is overruled.

Appellant by its 6th to 9th points, inclusive, contends in essence that plaintiff's counsel violated the order of the trial court to not mention directly or indirectly or to refer to or to intimate that the derrick block of which plaintiff complained was replaced after the accident and was not used thereafter by the introduction in evidence of plaintiff's exhibit No. 26 and by argument of Mr. Bath, one of appellant's counsel.

The Supreme Court of Texas heretofore reversed and remanded this cause, 262 S.W.2d 99, 104. We quote from this decision as follows:

"We hold it was reversible error to submit the issues in question in the form used and that on the next trial separate issues should be submitted for each item of defectiveness alleged and proved. * * *

"Our writ of error was granted also on the point of allegedly improper admission of evidence offered by the respondent White. This evidence is to the effect that when the derrick was again re-erected (following the accident) a particular foundation block, which the respondent had alleged to have been such as to render the derrick previously defective, was discarded and replaced with another. The point was raised by petitioner's counsel both by motion at the beginning of the trial to exclude such evidence if presented and by ample objections made when the evidence was offered. Nor can it be said that the objection was waived by such defensive steps as the petitioner took by way of cross-examination and explanatory testimony once the objectionable evidence was admitted. Both parties properly concede the existence of the rule that evidence of re-

pairs or precautions taken by a defend-ant after an accident is inadmissible to establish negligence of the defendant based on the previous condition of things as to which the repairs were made or precautions taken. See Texas Law of Evidence, McCormick & Ray, Sec. 503.

"The rule is largely one of policy and good sense to avoid discouraging safety measures, but is inapplicable where the evidence would be valid as to other issues which also exist in the case. McCormick & Ray, supra. In this latter connection, the respondent contends that there was an issue as to which of two foundation blocks, including the defective one, slid or gave away, and which of the two were resting on soft ground. As to this, it is enough to say that the replacement of the old block is actually not evidence on either issue, and that if it could be said to be remotely probative, the remoteness is too great to justify its admission, considering that it was not admissible on the issue of negligence."

Before the trial started defendant presented a motion to the trial court which, omitting formal parts, was as follows:

"Comes now defendant, before the introduction of any evidence in this case, and respectfully moves this Honorable Court to instruct counsel for the plaintiff not to mention directly or indirectly or to refer to or intimate that the block in question of which plaintiff complains was replaced after the accident and was not used thereafter, because the law favors improvements and it's against public policy to arouse prejudice against a party because of any act or deed made after an accident as a safety precaution."

This motion was sustained by the trial court.

There was testimony in the trial as to whether a derrick block with a "hairpin" in it should have been furnished by defendant. The block in question had no hairpin in it. There was also testimony with reference to the advisability of tying the deadline to the block or to the derrick leg and there was testimony that the tying of the deadline to the derrick leg, as the testimony shows was done in this case, was dangerous. Both sides questioned and cross-examined witnesses with reference to such matters and frequently referred to the term "hairpin." Apparently from the testimony a "hairpin" is an object set in the concrete derrick block from which the "deadline" is usually tied.

Appellee proved by the witness Kenneth Lewis (without objection on the part of appellant) that after the derrick in question collapsed that another derrick was put up and that he went back to work at a later time. Said witness was handed a photograph (plaintiff's exhibit No. 26) and was asked the following question by appellees' counsel: "Now I hand you a photograph and ask you to look at the picture and see with the exception of the washes if you recognize that picture as showing the location and so forth of the well?" The witness answered: "Yes, sir." Appellant's counsel objected to the introduction of the picture that it was "too remote and no showing of date, and therefore it is improper and prejudicial." No objection was then made that the picture purportedly showed a "hairpin" in it. The exhibit was admitted in evidence. Later appellant raised the question by moving for a mistrial on the ground that the picture showed a corner block with a "hairpin" in it and was a showing of improvements or repairs in violation of the court's order. Appellant at no time ever requested the trial court to withdraw the exhibit from the jury with instructions to disregard it but took the position that it was entitled to a mistrial.

Appellant in its supplemental brief also makes this statement:

"From the above it will of course be seen that at the time of the offering of the said picture the defendant's objection thereto contained nothing about the fact that the picture showed a corner block with a 'hairpin' in it. And, so

. far. as the record shows, there is no indication that defendant's counsel at that time noticed the fact that the picture clearly disclosed a corner block with a 'hairpin' in it. Defense counsel, however, did later move for mistrial because of the introduction of said picture on the ground of its 'hairpin showing,' and excepted to the court's ruling."

■ The record shows that no one ever mentioned or pointed out to the jury in any way that a "hairpin" allegedly was in the photograph in question. Appellant did not show that any of the jurors were familiar with a "hairpin" or discussed any alleged "hairpin" showing in said exhibit. Appellant contends that a "hairpin" is *readily discernible* in said exhibit—with this statement of appellant we do not agree as all three members of this court have carefully studied the exhibit in question and we can not *readily discern* the "hairpin", and in fact are not now definitely certain as to its exact location in the picture. We hold that the introduction in evidence of plaintiff's exhibit No. 26 does not reflect reversible error under this record. Appellant's 6th point is overruled.

■ Kenneth Lewis, a witness for appellee, testified without objection from appellant that "the block and derrick too had been drug up the hill approximately 75 yards away from the original scene of the well." Attorney Bath, one of appellee's attorneys, in his argument to the jury stated that "the next morning when Kenneth Lewis got there this block had been drug up the hill 75 feet—75 yards, and the derrick had been torn down. Appellant objected to this argument on the ground that such argument would show that the block in question was not used but was replaced and would violate the court's instructions with

reference to not showing improvements or repairs, etc., and moved the trial court to instruct the jury to not consider this argument, which was overruled by the trial court. The argument in question was clearly based on testimony in the record which had not been objected to. We have carefully considered the argument complained of and have reached the conclusion that it did not sufficiently show improvements or repairs to be in violation of the trial court's instructions and the prior ruling of the Supreme Court on the question of improvements or repairs, as to constitute reversible error under this record. Appellant's points 7, 8 and 9 are overruled.

Appellant's remaining points have been carefully considered and are deemed not to present reversible error under this record and are respectfully overruled.

We have carefully considered all of appellant's points in the light of the whole record in this case, and considering that the evidence strongly supports the jury's findings on negligence and that the verdict of the jury on damages was certainly not excessive in view of the unusually severe and serious permanent injuries sustained by plaintiff, taking into consideration his age, earning capacity and life expectancy, it is our best judgment that the matters complained of by appellant were not in law reasonably calculated to cause and probably did not cause the rendition of an improper judgment in this cause. Rules 434 and 503, T.R.C.P.; Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Benefit Ass'n of Rwy. Employees v. Dahn, Tex.Civ.App., 272 S.W.2d 762, error ref., n.r.e.

The judgment of the trial court is affirmed.